(No. 86888.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PATRICK HAGBERG, Appellee.

*Opinion filed July 6, 2000.*

HEIPLE, J., specially concurring.

James E. Ryan, Attorney General, of Springfield, and Gary W. Pack, State's Attorney, of Woodstock (Joel D. Bertocchi, Solicitor General, William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Martin P. Moltz and Lawrence M. Bauer, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel, and Jay Dahlin, law student), for the People.

Larry Wechter, of the Office of the State Appellate Defender, of Batavia, for appellee.

JUSTICE RATHJE delivered the opinion of the court:

Following a bench trial, defendant, Patrick Hagberg, was convicted of the unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1998)) and of a traffic violation. For the unlawful possession count, the circuit court of McHenry County sentenced him to 24 months' probation. Defendant appealed only his unlawful possession conviction. The appellate court reversed defendant's conviction and vacated his sentence, holding

that (1) a field test cannot be sufficient to sustain a finding that a substance is a controlled substance and (2) the State failed to prove the field test's reliability. 301 Ill. App. 3d 491. We granted the State's petition for leave to appeal.

The State now asks this court to reverse the appellate court and reinstate defendant's conviction. Defendant argues that the evidence was insufficient to sustain his conviction and also cross-appeals, claiming that he did not knowingly and understandingly waive his right to a jury.

## BACKGROUND

Only two witnesses, both police officers, testified at defendant's trial. One officer testified regarding a vial of cocaine that the State ultimately failed to prove was defendant's and that did not form the basis of defendant's conviction.

The other officer, William Bukovsky, testified concerning the substance that did form the basis of defendant's conviction. Bukovsky, a patrolman, stated that he stopped defendant because defendant was driving a vehicle with a broken taillight. Through his computer, Bukovsky discovered that defendant's driver's license was suspended. Defendant was arrested for that violation.

Bukovsky took defendant into custody, and defendant rode in the back of Bukovsky's squad car to the police station. The officer inspected the squad car daily and had not had any passengers in the backseat of his car since the last inspection. After defendant left the car, he asked Bukovsky to look into the car because defendant had dropped his wallet. While searching for the wallet, Bukovsky found a "folded-up piece of paper" on the floor of the backseat. Inside the paper was a "white, powdery substance." Bukovsky then asked defendant if it was his, and defendant denied ownership.

Bukovsky performed a field test on the substance. He testified that the test

"is basically several contained little packets with—I guess, the easiest thing to say, it's got a little glass vial in there, you put the substance in there, you shake it, you wait a couple minutes and when it turns a certain color that tells you if it tested positive for cocaine. There are different test kits for different kinds of drugs."

Bukovsky could not remember what color the substance became when it tested positive for cocaine. He recalled that the directions for the test, including the correct color, were listed on the packet. Bukovsky had performed between 20 and 30 field tests but had used the test for cocaine only five or six times. He had also received approximately four to six hours of training in field tests at the University of Illinois Corrections Academy. The State offered no other evidence regarding either the field test that was conducted by Bukovsky or the identification of the substance in the white folded paper. The State stipulated that the substance was never tested in a laboratory.

## ANALYSIS

### Sufficiency of the Field Test

The State argues that this court should reinstate defendant's conviction because the field test was sufficient to prove that the substance was a controlled substance. Defendant contends that a field test alone is never sufficient to support a conviction for possession. Defendant further argues that, even if a field test can be sufficient, the field test in this case was not.

This court discussed the sufficiency of a field test in *People v. Clark*, 7 Ill. 2d 163 (1955). In *Clark*, a police informant, who was a drug addict, told the defendant that he "had some topcoats for which he wanted to get some 'stuff.' " *Clark*, 7 Ill. 2d at 165. The informant went to the defendant's apartment and purchased two sealed packets of powder for $10. Those packets were taken to the police officer, who field tested them. The white powder tested positive for a derivative of opium. Later,

the powder was tested by a chemist and determined to be heroin, which is a derivative of morphine, a principle alkaloid of opium.

The defendant argued that there was some doubt as to whether the powder tested by the chemist was the same powder that was sold by the defendant. *Clark*, 7 Ill. 2d at 171. This court held that the lack of a proper chain of custody did not mandate reversal because a field test had been done on the substance purchased from the defendant, and that field test had yielded a positive result. *Clark*, 7 Ill. 2d at 171.

As defendant correctly notes, in *People v. Judkins*, 28 Ill. 2d 417 (1963), this court found a field test to be insufficient. *Judkins*, however, is distinguishable from *Clark*. In *Judkins*, the officer testified that the field test could show only that the substance "might be" narcotics. *Judkins*, 28 Ill. 2d at 419. No other evidence was presented to demonstrate that the substance actually *was* narcotics. In *Clark*, by contrast, the officer testified that the substance *was* a derivative of opium. *Clark*, 7 Ill. 2d at 171. Thus, *Judkins* did not hold that field tests categorically are insufficient but only that the particular test used in that particular case was insufficient.

Contrary to defendant's assertions, we agree with the State that this court has never held that a field test is insufficient to identify the substance as a narcotic simply because the test was a field test. Although the situation in which the test is conducted might be relevant to the accuracy of the test, the fact that it is a field test by itself does not make the test insufficient. This court's prior case law does not suggest such a general rule, and we see no reason to create one now.

Given that a field test can be sufficient in some cases, we now consider whether the field test in this case was sufficient to sustain defendant's conviction. When determining whether the evidence against a defendant

was sufficient to prove guilt beyond a reasonable doubt, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In a controlled substance case, the State must present sufficient evidence that the substance at issue is a controlled substance. *People v. Park*, 72 Ill. 2d 203, 211 (1978).

In this case, the State's only evidence regarding the identity of the powder found in the folded white piece of paper was the testimony of Officer Bukovsky. Bukovsky had performed a field test on the substance and determined from that test that the substance was cocaine. During cross-examination, however, Bukovsky admitted that he could not remember the name of the test, the instructions for performing the test (although he did testify that the instructions were listed on the test itself), the color that indicated that the substance was cocaine, or the color that the substance actually turned. Officer Bukovsky merely asserted that the substance somehow turned the right color, whatever that color might be. Standing alone, such vague and speculative testimony is by no means sufficient to support defendant's conviction. We therefore hold that the evidence was insufficient to convict defendant of unlawful possession of a controlled substance.

### Jury Waiver

Defendant also claims that he did not knowingly and understandingly waive his right to a jury under section 103—6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—6 (West 1998)). Defendant claims that, because he was not present at the court appearance at which the jury waiver was filed, his waiver was not proffered with the proper understanding. We have already reversed defendant's conviction and therefore do not reach this issue.

## CONCLUSION

In sum, we agree with the appellate court that defendant's conviction should be reversed. We do so not because we endorse the general rule that a field test can never be sufficient but because the evidence in this case did not sufficiently support defendant's conviction. Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE HEIPLE, specially concurring:

I concur in the majority's holding that the evidence in this case was insufficient to prove beyond a reasonable doubt that the substance found in defendant's possession was a controlled substance. The opinion falls short, however, in failing to hold that field tests currently in use, which seek to identify the composition of an unknown substance on the basis of a color change, are *never* sufficient to prove the composition of that substance beyond a reasonable doubt.

While positive results from a color-change test conducted in the field may well be sufficient as a preliminary screening mechanism and thus give rise to probable cause, such tests are, by their nature, nonspecific.[1] In other words, such tests can indicate only that a substance *may* contain, for example, cocaine. These tests cannot, and do not purport to, exclude the possibility that a tested substance may be something other than the controlled substance which the test seeks to identify.

Although I concur in the result reached by the majority, I would further hold that the State may never meet its burden to prove guilt beyond a reasonable doubt based solely upon the testimony of a police officer concerning the results of a color-change test conducted in the field.

---

[1]See, *e.g.*, P. Gianelli & E. Imwinkelreid, Scientific Evidence §§ 23—2, 23—2(B) (1993).