NOTICE

Decision filed 01/31/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0418

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Franklin County. |
| | ) |
| v. | ) No. 05-CF-13 |
| | ) |
| JONI R. MOCABY, | ) Honorable |
| | ) Leo T. Desmond, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

PRESIDING JUSTICE STEWART delivered the opinion of the court:

Following a jury trial in the circuit court of Franklin County, the defendant, Joni R. Mocaby, was found guilty of the unlawful delivery of a controlled substance, 10 pills containing morphine (720 ILCS 570/401(d) (West 2002)); the unlawful delivery of a controlled substance, 30 pills containing diazepam (720 ILCS 570/401(g) (West 2002)); and the unlawful delivery of a controlled substance, 36 pills containing dihydrocodeinone (720 ILCS 570/401(d) (West 2002)). The trial court sentenced the defendant to 30 months' probation and ordered her to pay various fees, including $420 in restitution to the Southern Illinois Drug Task Force. The defendant raises numerous arguments on appeal. We reverse in part, vacate in part, and modify in part.

BACKGROUND

Pursuant to information from a confidential source that morphine was available for purchase at the defendant's home, Inspector Stacy Eaton of the Southern Illinois Drug Task Force, along with a confidential source, made three undercover visits to the defendant's home to purchase controlled substances. The confidential source did not testify at the trial.

1

Eaton testified that, on each occasion, she and the confidential source went to the house unannounced.

The first visit occurred on January 27, 2003. The jury acquitted the defendant of the charge related to the drug purchase on that date.

The second visit occurred on February 3, 2003. Eaton testified that she and the confidential source asked the defendant for cocaine, but the defendant told them that the cocaine had already been sold. They then asked the defendant for pills. Eaton testified that the defendant sold her 10 morphine pills for $200.

The final visit occurred on March 4, 2003. Eaton testified that she and the confidential source again requested cocaine but that the defendant told them she did not have any. Eaton testified that the defendant offered them 30 Valium tablets for $120, which they purchased. Eaton testified that the defendant said that she had a friend coming over with Vicodin and that they decided to wait. Eaton testified that the friend had a plastic bag containing 36 Vicodin tablets, which they purchased for $100.

Thomas Sadowski, a forensic scientist at the Illinois State Police Crime Laboratory, testified that he weighed the pills purchased on February 3, 2003, compared them to a published identification system, and analyzed their chemical content with a mass spectrometer. He concluded that the pills contained morphine.

Grace Lively, a forensic scientist with the Southern Illinois Forensic Science Center, testified that she examined the pills purchased on March 4, 2003. She conducted a physical identification on the purported Valium and concluded that it contained diazepam. She conducted a physical identification and an "analytical analysis" on the purported Vicodin and concluded that it contained dihydrocodeinone.

The defendant testified on her own behalf. She denied selling the drugs at issue and denied any knowledge of those sales.

2

The jury convicted the defendant of the unlawful delivery on February 3, 2003, of a controlled substance, 10 pills containing morphine, in violation of section 401(d) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401(d) (West 2002)) (count II); the unlawful delivery on March 4, 2003, of a controlled substance, 30 pills containing diazepam, in violation of section 401(g) of the Act (720 ILCS 570/401(g) (West 2002)) (count III); and the unlawful delivery on March 4, 2003 of a controlled substance, 36 pills containing dihydrocodeinone, in violation of section 401(d) of the Act (720 ILCS 570/401(d) (West 2002)) (count IV). The trial court sentenced the defendant to 30 months' probation and ordered her to pay various fees, including $420 in restitution to the Southern Illinois Drug Task Force.

The defendant filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial, which the trial court denied. The defendant filed a timely notice of appeal.

ANALYSIS

The defendant's first argument on appeal is that her conviction on count III must be reversed because the State failed to prove that the substance at issue contained diazepam. In a criminal case, the State must prove every element of the offense beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004). Thus, in a controlled-substance case, the State must prove "that the substance at issue is a controlled substance." *People v. Hagberg*, 192 Ill. 2d 29, 34, 733 N.E.2d 1271, 1273-74 (2000). "When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Woods*, 214 Ill. 2d 455, 470, 828 N.E.2d 247, 257 (2005). This standard applies to all criminal cases, "regardless of the nature of the evidence."

3

*Cunningham*, 212 Ill. 2d at 279, 818 N.E.2d at 307.  If "the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt," the conviction must be reversed.  *People v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999).

Grace Lively, a forensic scientist with the Southern Illinois Forensic Science Center, testified as follows:

"Q.  What type of analysis did you perform on the contents of that bottle?

A.  Well, this contained tablets that I did a physical identification on them only, and, the physical identification, I looked up the markings in a publication that we have, and it's a pharmaceutical preparation that contains [d]iazepam."

On cross-examination, Lively acknowledged that she did not perform any type of chemical analysis of the tablets.

The State has the burden of proving beyond a reasonable doubt that the tablets at issue in count III were, in fact, a controlled substance.  See *Smith*, 185 Ill. 2d at 545, 708 N.E.2d at 371.  In *People v. Ayala*, 96 Ill. App. 3d 880, 881, 422 N.E.2d 127, 128 (1981), the defendant was found in possession of two bags containing a substance the State claimed was heroin.  The police chemist testified that he subjected a portion of each bag to a series of seven chemical color tests, which indicated that heroin *might* be present.  *Ayala*, 96 Ill. App. 3d at 881, 422 N.E.2d at 128.  He then performed infrared and ultraviolet spectrophotometer scans on a portion of the contents of one bag.  *Ayala*, 96 Ill. App. 3d at 881, 422 N.E.2d at 128.  These tests showed that the substance in that bag was heroin. *Ayala*, 96 Ill. App. 3d at 881, 422 N.E.2d at 128.  The court found that the chemical color tests were insufficient to prove beyond a reasonable doubt that the bag that was not subjected to the conclusive test also contained heroin.  *Ayala*, 96 Ill. App. 3d at 882, 422 N.E.2d at 129.  The court stated that while an inference could be drawn that the bag

4

contained heroin from the fact that the preliminary tests indicated heroin "might be present" and from the fact that the defendant possessed both bags with physically similar substances, that proof was not sufficient to prove the chemical content of the substance in the untested bag beyond a reasonable doubt. *Ayala*, 96 Ill. App. 3d at 882-83, 422 N.E.2d at 129. The court held that the State failed to prove the defendant guilty beyond a reasonable doubt of possession of more than 30 grams of heroin because for the second bag the State had not performed the available test that would have conclusively proved the bag contained heroin. *Ayala*, 96 Ill. App. 3d at 883, 422 N.E.2d at 129.

The court reached a similar conclusion in *People v. Games*, 94 Ill. App. 3d 130, 418 N.E.2d 520 (1981). In that case, the defendant was found guilty of the unlawful delivery of 30 to 500 grams of cannabis. *Games*, 94 Ill. App. 3d at 130, 418 N.E.2d at 520. The alleged cannabis was delivered in a single delivery of two bags. *Games*, 94 Ill. App. 3d at 130, 418 N.E.2d at 520. The Illinois Department of Law Enforcement chemist testified that she visually examined and weighed both bags and that she then performed a chemical analysis of one bag. *Games*, 94 Ill. App. 3d at 130-31, 418 N.E.2d at 521. She testified regarding the various tests she performed on the contents of the single bag. *Games*, 94 Ill. App. 3d at 131, 418 N.E.2d at 521. She testified that, based on her analysis, both bags weighed a total of 36.7 grams and that the tested material contained cannabis. *Games*, 94 Ill. App. 3d at 131, 418 N.E.2d at 521. The court held that no inference could be drawn concerning the composition of the untested bag. *Games*, 94 Ill. App. 3d at 131, 418 N.E.2d at 521. The court stated:

> "It is difficult not to speculate that the second bag contained cannabis. But that is not enough. The verdict must be based on evidence and not upon guess, speculation[,] or conjecture." *Games*, 94 Ill. App. 3d at 131, 418 N.E.2d at 521.
>
> *People v. Solomon*, 158 Ill. App. 3d 432, 433, 511 N.E.2d 875, 876 (1987), involved

5

an ineffective-assistance-of-counsel claim after the defendant had been convicted, following a bench trial, of the delivery of a controlled substance. In *Solomon*, defense counsel hired a chemist to examine the substance in question, but the chemist only performed a visual examination of the substance. No chemical testing was performed. In finding that there was a reasonable probability that the outcome of the trial had been affected by defense counsel's performance, the court held, "[D]efense counsel's failure to have the defense chemist perform any tests other than a visual examination with the naked eye on the 300 tablets sold to Officer Gadowski amounts to ineffective assistance of counsel." *Solomon*, 158 Ill. App. 3d at 437, 511 N.E.2d at 879. The court stated, "[T]he defense chemist's testimony was entirely worthless." *Solomon*, 158 Ill. App. 3d at 437, 511 N.E.2d at 879. In the present case, Lively's analysis of the tablets at issue was similar to the defense chemist's analysis in *Solomon* in that they both merely conducted a physical examination of the pills without any chemical analysis.

In *People v. Jones*, 174 Ill. 2d 427, 428, 675 N.E.2d 99, 100 (1996), the defendant was arrested for possession of five separate packets containing a white rocky substance. Two of the five packets were tested and were found to contain cocaine. *Jones*, 174 Ill. 2d at 428, 675 N.E.2d at 100. The court noted that look-alike substances are sold with such frequency that there is a law prohibiting their sale. *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101. The court stated, "Whether the untested packets in the instant case may have contained cocaine or mere look-alike substances is pure conjecture." *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101. The court held that the State could easily have tested a sample from each packet and, in failing to do so, did not prove beyond a reasonable doubt that the untested packets contained cocaine. *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101.

In the present case, there was no chemical analysis of the tablets involved in count III. The sole analysis consisted of a physical identification. The only information we have

6

regarding the physical identification is that the tablets were compared to pictures in a book. Lively did not describe the tablets, nor did she elaborate about which publication she used to make the physical identification. There is no indication that Lively did anything more than engage in conjecture that the tablets were diazepam based on her comparison with a depiction of tablets with similar characteristics, in some unknown publication. It is not enough to speculate that a substance is a controlled substance. The tablets could be look-alike substances. More conclusive evidence is needed. The State could have conducted a scientific analysis that would have conclusively determined that the tablets contained a controlled substance. Because the evidence regarding the composition of the tablets was not based on a conclusive scientific analysis, we find that the State failed to meet its burden of proof beyond a reasonable doubt that the tablets at issue in count III contained a controlled substance, and we therefore must reverse the defendant's conviction on count III.

The defendant next argues that her conviction on count IV must be reversed because the State failed to prove that the substance at issue in count IV contained dihydrocodeinone. As to these tablets, Lively testified:

"Q. And what type of analysis did you perform?

A. I did a physical identification on this, also, and looked it up in a publication that we have, and then I took the tablets and did analytical analysis on that.

Q. Were you able to form an opinion based on that analysis of what those contents–those items are?

A. Yes. The tablets contained dihydrocodeinone."

On cross-examination, Lively testified, "I did a physical identification and a chemical identification, and I also weighed them, weighed–well, I weighed both of them." Lively gave no further description regarding the tests she performed on the tablets.

7

In *People v. Hagberg*, 192 Ill. 2d 29, 30, 733 N.E.2d 1271, 1272 (2000), the defendant was arrested for unlawful possession of a controlled substance. The arresting officer testified that he performed a field test on the substance and that it tested positive for cocaine. *Hagberg*, 192 Ill. 2d at 31-32, 733 N.E.2d at 1272. The substance was never subjected to chemical analysis in a laboratory. *Hagberg*, 192 Ill. 2d at 32, 733 N.E.2d at 1273. The officer testified regarding how he performed the test, but he could not remember the name of the test, the color the substance would turn if it was cocaine, or what color the substance actually turned. *Hagberg*, 192 Ill. 2d at 34, 733 N.E.2d at 1274. The court held that the testimony was so vague and speculative that it was insufficient to support the defendant's conviction. *Hagberg*, 192 Ill. 2d at 34, 733 N.E.2d at 1274.

Lively's testimony regarding the analysis of the pills at issue in count IV of this case was just as vague and speculative as the officer's testimony in *Hagberg*. We do not know what types of tests were performed, how the tests were performed, whether the tests performed are conclusive or nonconclusive tests, or whether the tests performed are the types of tests typically performed to detect the presence of a controlled substance. Lively's testimony does not illuminate how she identified the substance as dihydrocodeinone. Therefore, we conclude that the evidence was not sufficient to meet the State's burden of proof beyond a reasonable doubt, and we therefore must reverse the defendant's conviction on count IV.

Because we reverse counts III and IV based on the insufficiency of the evidence, we need not address the defendant's chain-of-custody argument that her convictions on those counts must be reversed because the State did not prove that drug task force personnel employed reasonable protective measures to ensure that the substances recovered from her were the same substances tested by its forensic chemist. Likewise, we need not address the defendant's argument that her conviction for unlawful delivery of dihydrocodeinone (count

8

IV) should be reduced to a Class 3 felony.

The defendant next argues that the part of her sentence ordering her to pay restitution to the Southern Illinois Drug Task Force must be vacated as unauthorized. The clear purpose of the restitution order was to reimburse the agency for the funds used to purchase the alleged controlled substances. Section 5-5-6 of the Unified Code of Corrections (730 ILCS 5/5-5-6 (West 2002)) allows a court to order a defendant to pay restitution. The statute provides, in pertinent part, that in determining the amount of restitution to be paid, "the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries." 730 ILCS 5/5-5-6(b) (West 2002). Many individuals engaged in the sale of controlled substances are brought to justice by undercover agents posing as customers and using public monies to purchase the drugs. *People v. Evans*, 122 Ill. App. 3d 733, 740, 461 N.E.2d 634, 639 (1984). Monies used in this way are a part of the investigating agency's normal operating costs, and the agency is not a victim as contemplated by section 5-5-6. *Evans*, 122 Ill. App. 3d at 740, 461 N.E.2d at 639. The rationale behind this finding "is that a law enforcement agency ought not be compensated for the public money that it spends in performing its basic function of investigating and solving crimes." *People v. Danenberger*, 364 Ill. App. 3d 936, 944, 848 N.E.2d 637, 644 (2006). Restitution to law enforcement agencies for funds used to purchase illegal drugs is not authorized by the statute, and the imposition of a fine or forfeiture proceedings are the proper remedies. *Evans*, 122 Ill. App. 3d at 740, 461 N.E.2d at 639.

In the present case, the defendant was ordered to pay restitution to the Southern Illinois Drug Task Force in the amount of $420, the sum the agency spent in purchasing the pills from her. The $420 spent by the Southern Illinois Drug Task Force was public money used in the investigation of a crime. Therefore, the agency is not a victim as contemplated

by section 5-5-6, and that portion of the sentence is void.

The State contends that because the defendant failed to preserve the restitution issue by objecting at the trial or in a posttrial motion challenging her sentence, the issue is procedurally defaulted. We disagree. Any portion of a sentence not authorized by statute is void. *People v. Thompson*, 209 Ill. 2d 19, 23, 805 N.E.2d 1200, 1203 (2004). Void orders may be attacked at any time in any court. *Thompson*, 209 Ill. 2d at 25, 805 N.E.2d at 1203. Because the portion of the defendant's sentence ordering restitution was unauthorized and void, her argument seeking to vacate the order requiring restitution was not procedurally defaulted.

Upon rehearing, the defendant argues that her street-value fine of $420 should be reduced to $200 to reflect this court's reversal of her conviction on counts III and IV. The State confesses this issue, and we agree that the street-value fine should be reduced to $200.

Finally, the defendant argues that she is entitled to a credit of $55 against her street-value fine. The State confesses error on this issue, and we agree that the defendant is entitled to the $55 credit.

## CONCLUSION

For the foregoing reasons, the defendant's conviction on counts III and IV are reversed, her conviction on count II stands, that portion of her sentence ordering her to pay restitution to the Southern Illinois Drug Task Force is vacated, her street-value fine is reduced to $200, and she is entitled to a $55 credit against her street-value fine.


Affirmed in part, reversed in part, vacated in part, and modified in part.


WELCH and WEXSTTEN, JJ., concur.

NO. 5-06-0418

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,) Appeal from the
                                    ) Circuit Court of
    Plaintiff-Appellee,             ) Franklin County.
                                    )
v.                                  ) No. 05-CF-13
                                    )
JONI R. MOCABY,                     ) Honorable
                                    ) Leo T. Desmond,
    Defendant-Appellant.            ) Judge, presiding.

_____

**Opinion Filed**:         January 31, 2008

_____

**Justices**:      Honorable Bruce D. Stewart, P.J.

                Honorable Thomas M. Welch, J., and
                Honorable James M. Wexstten, J.,
                Concur

_____

**Attorney**      Daniel M. Kirwan, Deputy Defender, Office of the State Appellate Defender, Fifth
**for**           Judicial District, 117 North Tenth Street, Suite 300, Mt. Vernon, IL 62864
**Appellant**

_____

**Attorneys**    Hon. Thomas J. Dinn III, State's Attorney, Franklin County Courthouse, 411 East
**for**           Main, Benton, IL 62812; Norbert J. Goetten, Director, Stephen E. Norris, Deputy
**Appellee**    Director, Sharon Shanahan, Contract Attorney, Office of the State's Attorneys
                Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
                Vernon, IL 62864

_____