NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240197-U

NO. 4-24-0197

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| DUSTIN M. MILLER, | ) | No. 14CF101 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Grischow concurred in the judgment.

**ORDER**

¶ 1 *Held*: The appellate court affirmed the dismissal of defendant's postconviction petition, concluding (1) the trial court ruled on all the claims raised in the petition and (2) the petition failed to make a substantial showing of a constitutional violation.

¶ 2 Defendant, Dustin M. Miller, appeals the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant argues this court should remand for further second-stage proceedings because the trial court failed to rule on one of the claims raised in his petition or, alternatively, remand for a third-stage evidentiary hearing because his petition made a substantial showing that he was provided ineffective assistance when his trial counsel stipulated to the evidence at trial rather than challenging the chain of custody of the suspected methamphetamine found on his property. For the reasons that follow, we affirm the dismissal of defendant's postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Information

¶ 5        In September 2014, the State charged defendant by information with unlawful participation in methamphetamine production (720 ILCS 646/15(a)(2)(A) (West 2014)) (count I), unlawful methamphetamine conspiracy (*id.* § 65(a)) (count II), unlawful possession of anhydrous ammonia (*id.* § 25(a)(1)) (count III), unlawful possession of methamphetamine precursors (*id.* § 20(a)(1) (count IV), unlawful use of property (*id.* § 35(a)) (count V), unlawful possession of methamphetamine manufacturing materials (*id.* § 30(a)(1)) (count VI), and unlawful possession of anhydrous ammonia in an unauthorized container (*id.* § 25(a)(1)) (count VII). Later that year, defendant retained counsel to represent him against these charges.

¶ 6                                    B. Motions to Suppress

¶ 7        In early 2015, defendant's counsel informed the trial court of the defense's strategy: "[T]he whole case [will] ride on a Motion to Suppress and if that's denied, then we would have an agreement of some sort." Thereafter, counsel filed a motion to suppress items discovered on defendant's property and a motion to suppress statements defendant made to law enforcement officers. At a hearing on the motions, counsel elicited testimony from defendant and cross-examined the law enforcement officers called by the State. The court, after considering the evidence presented, denied defendant's motions to suppress. In reaching its decisions, the court found defendant's account was not believable.

¶ 8                                    C. Stipulated Bench Trial

¶ 9        In February 2016, the trial court held a stipulated bench trial. By agreement, the court took judicial notice of the following stipulated facts:

            "A. On September 11, 2014, Inspector Jeffrey Brown, of the Illinois

State Police, received information that Timothy A. Hemingway would be manufacturing methamphetamine at or near an old church in rural Mt. Pulaski, Illinois. On September 11, 2014, Inspector Brown, [Special Agent (S/A)] Hansen and Sgt. Shearer, of the Illinois State Police, went to a location referred to as 'Miller's Church' located at 79 1500th Avenue, Mt. Pulaski, Logan County, Illinois. S/A Hansen, while driving past the property observed a white pickup truck parked on the property. S/A Hansen drove onto the driveway of the property and observed a red Pontiac Firebird parked on the property next to the driveway. S/A Hansen also observed smoke from a fire located on the property. The white pickup truck was parked in a way that obstructed the view of the fire from the roadway.

B. S/A Hansen made contact with a male near the white pickup truck on the property. The male was later identified to be the Defendant *** with a date of birth of November 12, 1983. The Defendant *** told S/A Hansen that the property and the structures on it were his but that he did not live at that location. The Defendant *** told S/A Hansen that Tim Hemingway was also present but must have run off upon the arrival of the police.

C. The Defendant *** gave Sgt. Shearer consent to search his property for Tim Hemingway and for any evidence of a methamphetamine lab. An initial search was conducted by S/A Hansen and Sgt. Shearer, who located Timothy A. Hemingway hidden on the property near the structure on the property and a fuel tank. Illinois State Police Agents conducted a search for evidence on the property which produced items of evidence, including but not limited to the following:

Exhibit #1 – a plastic bottle containing a white substance located in a fire pit on the property;

Exhibit #3 – a plastic pitcher with a blue top containing a coffee filter located on top of a 55 gallon drum on the property;

Exhibit #4 – a representative sample taken from Exhibit #3 weighing approximately 3 grams;

A ten pound propane tank located in a grassy area on the property;

A plastic bottle used as a Hydrogen Chloride (HCL) generator located in a fire pit on the property;

A 16 ounce full bottle of Liquid Fire located in a shed;

A container of salt located on top of a 55 gallon drum on the property;

A glass container with a coffee filter covering the opening of the glass container and a black funnel inside located in a shed on the property.

D. [S/A] Brian Hayes, of the Illinois State Police, recovered each of the above items of evidence and secured each item and maintained each item of evidence in a secured and sealed condition. S/A Hayes, who is trained and has experience in testing substances for the presence of methamphetamine, conducted a field test of the contents of Exhibit #4 which results were positive as a substance containing methamphetamine. Exhibit #3 was maintained in a sealed and secured condition in the exclusive possession of S/A Hayes until he deposited Exhibit #3 with the Illinois State Police Methamphetamine Storage Container. Exhibit #4 was maintained in a sealed and secured condition in the exclusive control of S/A Hayes until he deposited Exhibit #4 in the Illinois State

Police Statewide Evidence Vault where it remains in a sealed and secured condition. S/A Hayes, who is trained and has experience in conducting tests for anhydrous ammonia, further tested the contents of the 10 pound propane tank and the contents tested positive for the presence of anhydrous ammonia.

E. The parties stipulate that there is a sufficient chain of custody for each of the above referenced items of evidence.

F. Pseudoephedrine, lithium batteries, Liquid Fire, coffee filters, a [HCL] generator, and anhydrous ammonia are used in the process to manufacture methamphetamine.

G. Inspector Brown conducted an interview of Timothy A. Hemingway on September 11, 2014. Timothy Hemingway stated that on September 10, 2014, the Defendant *** asked Hemingway whether he possessed any anhydrous ammonia. Hemingway did have anhydrous ammonia in his possession in a ten pound propane tank. On September 11, 2014, the Defendant *** picked up Timothy Hemingway, along with the anhydrous ammonia, at his house in Decatur, Illinois[,] for the purpose of manufacturing methamphetamine at property known as 'Miller's Church'. The Defendant *** already had in his possession 3 boxes of pseudoephedrine, a methamphetamine precursor. On the way to 'Miller's Church', the Defendant *** went to a Kroger's store off of Illinois Route 48 and purchased lithium batteries for the purpose of manufacturing methamphetamine. The two later arrived at 'Miller's Church'. Timothy Hemingway stated that he and the Defendant *** had started the manufacture of methamphetamine and were interrupted when police

officers arrived on the property.

> H. Inspector Brown conducted an interview of the Defendant *** on September 11, 2014. The Defendant *** admitted that he allowed Timothy Hemingway to use his property at 79 1500th Avenue, Mt. Pulaski, Illinois[,] to manufacture methamphetamine so Timothy Hemingway could get money to pay the Defendant *** on a debt. The Defendant *** also admitted that he purchased pseudoephedrine and lithium batteries to be used by Timothy Hemingway in the manufacture of methamphetamine."

Following the presentation of the stipulated facts, defendant's counsel noted:

> "I would just indicate briefly for the record that as the court recalls there was a previous suppression hearing *** and the defendant did testify at that time and in this trial we are not stipulating to the sufficiency of the evidence in order to preserve the pretrial motions for appeal."

The court, based upon the stipulated facts, found defendant guilty of counts I through VI but not guilty of count VII.

¶ 10                     D. Motion for a New Trial and Sentencing

¶ 11        In March 2016, defendant's counsel filed a motion for a new trial, arguing the trial court erred in denying defendant's motions to suppress. At a later hearing, the court denied the posttrial motion and then proceeded to sentencing. The court merged defendant's convictions on counts II, III, IV, and VI with his conviction on count I and then sentenced defendant to concurrently imposed terms of 20 years' imprisonment on count I and 5 years' imprisonment on count V.

¶ 12                     E. Direct Appeal

¶ 13          Defendant filed a direct appeal, challenging the trial court's rulings on his motions to suppress and its imposition of a 20-year prison sentence. *People v. Miller*, 2020 IL App (4th) 180124-U, ¶ 3. In May 2020, this court rejected defendant's challenges and affirmed. *Id.*

¶ 14                              F. Postconviction Petition

¶ 15          In February 2021, defendant filed a postconviction petition, which was later advanced to the second stage of postconviction proceedings. Defendant filed an amended petition, raising multiple claims, including, in part, claims that trial counsel (1) coerced him into agreeing to "the Stipulation" and (2) rendered ineffective assistance by stipulating to the evidence at trial rather than challenging the chain of custody of the suspected methamphetamine found on his property. In support of the latter claim, defendant attached to his petition an investigative report drafted by S/A Hayes and a crime lab report. S/A Hayes's report indicates he recovered from defendant's property, in part, (1) an approximately 10-gram sample of a white substance suspected to be pseudoephedrine from a plastic bottle located in a fire pit; (2) approximately 79.5 grams of a substance suspected to be "residual material from a meth cook" found in a coffee filter inside a blue-topped plastic pitcher on a 55-gallon drum, which he labeled as "Exhibit #3"; and (3) an approximately 3-gram sample of the substance from Exhibit #3, which he labeled as "Exhibit #4." The crime lab report indicates two substances were submitted to the laboratory on October 2, 2014, related to defendant: (1) a 4.5-gram sample of a "wet white chunky substance" that tested negative for any scheduled substances and (2) a 0.7-gram sample of a "pink powder" that tested positive for methamphetamine. Defendant noted he received the lab report via a Freedom of Information Act (FOIA) (see 5 ILCS 140/1 *et seq.* (West 2020)) request and believed the report should have been available to his trial counsel in discovery.

¶ 16          In June 2022, the State filed a motion to dismiss defendant's postconviction

petition. The State argued, in part, even if defendant's trial counsel erred by stipulating to the evidence at trial, the error would not have had any effect on the judgment.

¶ 17         In August 2022, the trial court held a hearing on the State's motion to dismiss defendant's postconviction petition. The court, after indicating it had reviewed defendant's petition, the State's motion, and a written response to the State's motion recently filed by defendant, granted the State's motion and dismissed defendant's petition. In its oral pronouncement of its decision, the court stated, in part:

> "As to the stipulation of the parties, it was clear that both parties agreed to the stipulation. That's why it was a stipulation of the evidence. I don't believe that the actions of your counsel in going through that stipulation, which at the time that you had agreed with the stipulation, was ineffective of that attorney. As actually just pointed out by the State, had the stipulation not been given, evidence would have been produced at the trial, so there would not have been a potential change in the outcome because the stipulation laid out the evidence that would have been presented."

¶ 18         Also in August 2022, defendant filed a motion to reconsider the dismissal of his postconviction petition, which he later amended and supplemented. In his motion, defendant maintained, in part, his trial counsel provided ineffective assistance by stipulating to the evidence at trial rather than challenging the chain of custody of the suspected methamphetamine found on his property. Defendant attached to his motion S/A Hayes's report and the crime lab report.

¶ 19         In January 2024, the trial court held a hearing on defendant's motion to reconsider. At the commencement of the hearing, the court noted defendant's motion was mostly "rearguing what was previously presented." The court allowed oral argument. In part, defendant argued:

"Also, nothing was ever presented showing anything tested positive for meth by the State until I presented affirmative proof in the form of an ISP, Illinois State Police lab report that I [FOIAed] and it shows the substance given to them was not the same substance taken from my property. It shows in the police reports and stipulation. Other than there is a statement in a report, which I included in that motion, of an officer that did not testify that he performed a field test which is not sufficient to convict. As we know, field tests are not always accurate and have been proven inaccurate on many occasions. We dont have any proof of the results of that field test."

The court, after indicating it had reviewed defendant's motion and considered his oral argument, denied defendant's motion to reconsider.

¶ 20        This appeal followed.

¶ 21                            II. ANALYSIS

¶ 22        On appeal, defendant argues this court should remand for further second-stage postconviction proceedings because the trial court failed to rule on one of the claims raised in his petition or, alternatively, remand for a third-stage evidentiary hearing because his petition made a substantial showing that he was provided ineffective assistance when his trial counsel stipulated to the evidence at trial rather than challenging the chain of custody of the suspected methamphetamine found on his property. The State disagrees with each of defendant's arguments.

¶ 23        At the outset, we reject defendant's jurisdictional challenge, finding it is not supported by the record presented. Defendant's challenge is based upon the trial court's alleged failure to rule on one of the claims raised in his postconviction petition—his claim that he was provided ineffective assistance when his trial counsel stipulated to the evidence at trial rather than

challenging the chain of custody of the suspected methamphetamine found on his property. The record, however, shows the following: (1) the court, after indicating it had reviewed defendant's petition, the State's motion, and defendant's response to the motion, granted the State's motion and outright dismissed defendant's petition; (2) the court, in its oral pronouncement of its decision, indicated it agreed with the State's assessment that defendant had not made the requisite showing of ineffective assistance; and (3) the court, after indicating it had reviewed defendant's motion to reconsider and considered his oral argument, outright denied defendant's motion to reconsider. Based upon this record, we conclude the court ruled on all the claims raised in defendant's petition and, therefore, defendant's jurisdictional challenge fails.

¶ 24    We now turn to defendant's challenge to the dismissal of his amended postconviction petition. Defendant argues his postconviction petition should not have been dismissed because it made a substantial showing that trial counsel provided ineffective assistance by stipulating to the evidence at trial rather than challenging the chain of custody of the suspected methamphetamine found on his property. Defendant specifically contends the chain of custody of the suspected methamphetamine should have been challenged based upon "discrepancies" between S/A Hayes's report and the crime lab report.

¶ 25    The Act provides a "statutory procedure by which a defendant can pursue a claim that his conviction or sentence was based on a substantial denial of his constitutional rights." *People v. Clark*, 2023 IL 127273, ¶ 38. The Act generally contemplates three stages. *People v. Johnson*, 2021 IL 125738, ¶ 24. Where, as in this case, a postconviction petition is dismissed at the second stage, the dismissal is reviewed *de novo. People v. Huff*, 2024 IL 128492, ¶ 13.

¶ 26    At the second stage of postconviction proceedings, a court "must determine whether the petition and any accompanying documentation make a substantial showing of a

constitutional violation." (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 33. In making this determination, the court takes "all well-pleaded facts that are not positively rebutted by the trial record" as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis omitted.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 27 "Both the United States and Illinois constitutions guarantee criminal defendants the right to the effective assistance of counsel." *People v. Hale*, 2013 IL 113140, ¶ 15. To establish a claim of ineffective assistance of counsel, a defendant must show *both* (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance of counsel prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); see *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting the *Strickland* standard). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.). *Domagala*, 2013 IL 113688, ¶ 36. A court "may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance." *Hale*, 2013 IL 113140, ¶ 18.

¶ 28 In this case, we agree with the trial court's assessment—defendant's amended postconviction petition failed to make a substantial showing that he was prejudiced by trial counsel stipulating to the evidence at trial rather than challenging the chain of custody of the suspected methamphetamine found on his property. Even assuming, *arguendo*, any doubt could be raised as

to whether the substances tested by the crime lab were the same substances recovered from defendant's property, we are not convinced it would change the outcome based upon the other information and evidence set forth in the stipulations.

¶ 29      Defendant was ultimately convicted and sentenced on one count of unlawful participation in methamphetamine production (720 ILCS 646/15(a)(2)(A) (West 2014)) and one count of unlawful use of property (*id.* § 35(a)). Section 15(a)(1) of the Methamphetamine Control and Community Protection Act (*id.* § 15(a)(1)) makes it "unlawful to knowingly participate in the manufacture of methamphetamine with the intent that methamphetamine or a substance containing methamphetamine be produced." Section 15(a)(2)(A) (*id.* § 15(a)(2)(A)), in turn, provides a person "who participates in the manufacture of less than 15 grams of methamphetamine or a substance containing methamphetamine is guilty of a Class 1 felony." Section 35(a) of the Methamphetamine Control and Community Protection Act (*id.* § 35(a)) makes it "unlawful for a person knowingly to use or allow the use of a vehicle, a structure, real property, or personal property within the person's control to help bring about a violation of this Act." Section 35(b) (*id.* § 35(b)), in turn, provides a person "who violates subsection (a) of this section is guilty of a Class 2 felony."

¶ 30      It was stipulated "S/A Hayes, who is trained and has experience in testing substances for the presence of methamphetamine, conducted a field test of the contents of Exhibit #4 which results were positive as a substance containing methamphetamine." Defendant, relying on *People v. Hagberg*, 192 Ill. 2d 29 (2000), suggests the information from this stipulation would be insufficient to prove a substance containing methamphetamine was found on his property because it is vague and speculative. We disagree. The stipulation sets forth S/A Hayes's qualifications—he is trained and experienced in testing substances for the presence of

methamphetamine. The stipulation also sets forth, in no uncertain terms, S/A Hayes's actions and the results therefrom—he conducted a field test of the contents of a particular substance found on defendant's property, the results of which were positive for a substance containing methamphetamine. Aside from mere speculation concerning the accuracy of the field test, defendant has not challenged the information from this stipulation. *Hagberg* is distinguishable in that the officer in that case admitted he could not remember specific details of the administered field test. See *id.* at 34. We find S/A Hayes's expected testimony based upon the stipulation would be sufficient to prove a substance containing methamphetamine was found on defendant's property. See, *e.g.*, *People v. Harrison*, 26 Ill. 2d 377, 379-80 (1962) (finding the police officers' testimony regarding positive result of a field test was "competent evidence" of the presence of a narcotic in a drug prosecution in which the State did not present a lab report).

¶ 31　　　　It was also stipulated (1) law enforcement found several items of evidence at defendant's property suggestive of a methamphetamine lab operation, (2) Hemingway implicated defendant in the manufacture of methamphetamine at defendant's property, and (3) defendant admitted to both purchasing items to be used for the manufacture of methamphetamine and allowing Hemingway to use his property to manufacture methamphetamine. The information from these stipulations is not challenged by defendant on appeal.

¶ 32　　　　After considering the other information and evidence set forth in the stipulations against the offenses for which defendant was ultimately convicted and sentenced, we find defendant has failed to make a substantial showing there is a reasonable probability the result of the proceeding would have been different had his counsel not stipulated to the evidence at trial and challenged the chain of custody of the suspected methamphetamine found on his property. Absent any other argument, we conclude defendant's postconviction petition failed to make a substantial

- 13 -

showing of a constitutional violation and, therefore, was properly dismissed.

¶ 33                                III. CONCLUSION

¶ 34         For the reasons stated, we affirm the trial court's judgment.

¶ 35         Affirmed.